UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------X
GARY LA BARBERA, et al.,

        Plaintiffs,

   - against -

FEDERAL METAL & GLASS CORP.,

        Defendant.
-------------------------------------------------------X

**REPORT    AND**
**<u>RECOMMENDATION</u>**

07 CV 3043 (NG)

       Plaintiffs, Trustees of Local 282 of the International Brotherhood of Teamsters Welfare, Pension, Annuity, Job Training and Vacation and Sick Leave Trust Funds (the "Funds"), filed this action on July 24, 2007 against defendant Federal Metal & Glass Corp. ("Federal"), pursuant to the Employee Retirement Income Security Act of 1974, as amended, 29 U.S.C. § 1001 et seq. ("ERISA"), seeking to compel Federal to submit to an audit of its books and records and, if the audit shows that there were contributions owed, to recover those delinquent contributions owed to the Funds, along with any late fees and attorneys' fees. (Compl.[1] ¶ 1). In the alternative, if defendant has failed to maintain the proper records necessary to conduct an audit and calculate contributions, plaintiffs seek to collect an estimated amount of contributions calculated according to the formula set forth in the Funds' Agreement and Declaration of Trust ("Trust Agreement"), along with late fees and attorneys' fees.

       Defendant failed to file an answer or otherwise move with respect to the Complaint in a timely manner, and the Clerk of the Court entered a default with respect to this action on March

---

[1]Citations to "Compl." refer to plaintiffs' Complaint filed July 24, 2007.

7, 2008.  By Order dated March 21, 2008, the Honorable Nina Gershon, United States District

Judge, granted a default judgment to plaintiffs and referred the matter to the undersigned to

conduct an inquest on damages.


## FACTUAL BACKGROUND

According to the Complaint, plaintiffs are trustees of multi-employer benefit plan trusts

that provide fringe benefits to employees performing services within the jurisdiction of Local 282

of the International Brotherhood of Teamsters (the "Union").  (Compl. ¶¶ 5,7; Cody Decl.[2] ¶ 2).

Defendant is a New York corporation located at 104-07 180th Street, Jamaica, New York and/or

52-15 11th Street, Suite 1, Long Island City, New York.  (Compl. ¶ 8).  Defendant is a signatory

to the 2002-2005 Building Material Contractors Industry Collective Bargaining Agreement with

the Union (the "CBA") from at least July 1, 2002 through June 30, 2005.  (Id. ¶ 9; Cody Decl. ¶

6, Ex. B).  Pursuant to the CBA and the Trust Agreement, which is incorporated into the CBA,

defendant was required to pay fringe benefit contributions to the Funds based on work performed

by the individual employees of defendant.  (Cody Decl. ¶¶ 3, 7-8; Exs. A, B).  The Trust

Agreement also requires employers to submit remittance report forms and to allow plaintiffs to

examine and audit the pertinent payroll books and records of the employer to insure that the

proper number of hours are credited to the individual employees.  ((Id. ¶¶ 10, 11, Ex. A; Compl.

¶¶ 10, 11)).

Plaintiffs allege that defendant Federal has failed to submit remittance reports covering

---

[2]Citations to "Cody Decl." refer to the Declaration of Theresa Cody in support of
plaintiffs' request for default judgment, dated February 28, 2008, and exhibits thereto.

the period from February 1, 2005 through June 30, 2005. (Cody Decl. ¶ 17). In addition,

plaintiffs allege that defendant Federal failed to provide the Trustees' auditors access to its books

and records for the period from December 1, 2004 to June 30, 2005, in violation of the CBA and

the Trust Agreement. Specifically, plaintiffs assert that, by letter dated January 8, 2007, their

auditors notified them that Federal had failed to respond to a written request that it produce the

books and records requested so that an audit could be performed. (Compl. ¶ 13) Thereafter, the

Trustees referred the matter to the Funds' co-counsel, which sent letters to defendant dated

February 20, 2007 and July 9, 2007 demanding that Federal respond to the Trustees' request for

an audit. (Id. ¶ 14). Federal's continued failure to submit to an audit constitutes a breach of the

CBA, the Trust Agreement and ERISA. (Id. ¶¶ 15, 16; Cody Decl. ¶ 11).

On July 24, 2007, plaintiffs filed this action seeking an Order compelling Federal to

submit to an audit and to pay any delinquent contributions, plus interest, liquidated damages,

audit fees, and attorneys' fees and costs as authorized by 29 U.S.C. § 1132. In the alternative, if

Federal has failed to maintain its records as it was required to do by ERISA and the CBA,

plaintiffs requested an award of estimated delinquent contributions calculated in accordance with

the formula set forth in the Trust Agreement, along with interest, liquidated damages, audit fees

and attorneys' fees and costs.

When defendant failed to answer the Complaint, plaintiffs filed a request for entry of a

default judgment. The request for default judgment and any issue as to damages was referred to

this Court by Order dated March 21, 2008. On March 25, 2008, this Court Ordered the parties to

submit additional papers on this matter by April 25, 2008. Plaintiffs submitted a letter in

response, dated August 20, 2008, indicating that they would submit no additional papers, but to

date defendant has failed to respond.

## DISCUSSION

A. Default Judgment

    1) Standards

Rule 55(a) of the Federal Rules of Civil Procedure provides: "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend as provided by these rules and that fact is made to appear by affidavit or otherwise, the clerk shall enter the party's default." Fed. R. Civ. P. 55(a). As a threshold issue, Rule 55 sets forth a two-step process that first requires the entry of a default through a notation on the record that the party has defaulted, and then entry of a default judgment, which is the final action in the case. See Enron Oil Corp. v. Diakuhara, 10 F.3d 90, 95-96 (2d Cir. 1993). The court clerk automatically enters the default pursuant to Rule 55(a) of the Federal Rules of Civil Procedure, by notation of the party's default on the clerk's record of the case. See id.

After a default has been entered against a party, if that party fails to appear or otherwise move to set aside the default pursuant to Rule 55(c), a default judgment may be entered. See Fed. R. Civ. P. 55(b). Although an application for entry of default should be made before a motion for entry of default judgment, courts will generally excuse a failure to obtain entry of default before the motion for default judgment is made. See, e.g., Hirsch v. Innovation Int'l, Inc., No. 91 CV 4130, 1992 WL 316143, at *1-2 (S.D.N.Y. Oct. 15, 1992). Here, plaintiffs submitted a request for both entry of default and default judgment on March 7, 2008. The clerk of court entered a default later that same day.

In determining whether a default judgment should enter, courts have cautioned that a default judgment is an extreme remedy that should only be granted as a last resort. See Meehan v. Snow, 652 F.2d 274, 277 (2d Cir. 1981). While the Second Circuit has recognized the "push on a trial court to dispose of cases that, in disregard of the rules, are not processed expeditiously [and] . . . delay and clog its calendar," it has held that the district court must balance that interest with its responsibility to "[afford] litigants a reasonable chance to be heard." Enron Oil Corp. v. Diakuhara, 10 F.3d at 95-96. Thus, in light of the "oft-stated preference for resolving disputes on the merits," defaults are "generally disfavored" and doubts should be resolved in favor of the defaulting party. Id. Accordingly, just because a party is in default, the plaintiff is not entitled to a default judgment as a matter of right. See Erwin DeMarino Trucking Co. v. Jackson, 838 F. Supp. 160, 162 (S.D.N.Y. 1993) (noting that courts must "supervise default judgments with extreme care to avoid miscarriages of justice").

The court possesses significant discretion and may consider a number of factors in deciding whether or not to grant a default judgment, including whether the grounds for default are clearly established, and the amount of money potentially involved – the more money involved, the less justification for entering the default judgment. See Hirsch v. Innovation Int'l, Inc., 1992 WL 316143, at *2. Additionally, a court may consider whether material issues of fact remain, whether the facts alleged in the complaint state a valid cause of action, whether plaintiff has been substantially prejudiced by the delay involved, and how harsh an effect a default judgment might have on the defendant. See Au Bon Pain Corp. v. Artect, Inc., 653 F.2d 61, 65 (2d Cir. 1981); 10A Charles Alan Wright et al., Federal Practice and Procedure, §§ 2685, 2688, at 32-38, 57-63 (3d ed. 1998).

## 2) Application

Having reviewed the prior proceedings in the current case, this Court respectfully recommends that default judgment be entered against defendant. The Complaint clearly sets forth facts establishing a claim that the defendant violated Sections 209 and 515 of ERISA, as well as various provisions of the CBA and Trust Agreement. Section 209 of ERISA requires an employer to "maintain records with respect to each of his employees sufficient to determine the benefits due or which may become due to such employees." 29 U.S.C. § 1059(a). These records must be "available for examination for a period of not less than six years. . . ." 29 U.S.C. § 1027. Section 515 of ERISA states:

> Every employer who is obligated to make
> contributions to a multiemployer plan under the
> terms of the plan or under the terms of a collectively
> bargained agreement shall, to the extent not
> inconsistent with law, make such contributions in
> accordance with the terms and conditions of such
> plan or such agreement.

29 U.S.C. § 1145. Consistent with Section 209 of ERISA, Article IX(1)(d) of the Trust Agreement, which is incorporated explicitly into the CBA (Cody Decl. ¶ 7, Ex. B § 18(g)), provides that "[t]he trustees [of the Funds] may at any time audit the pertinent books and records of any Employer in connection with" the employer's contributions to the Funds. (Id. ¶ 10, Ex. A).

Here, plaintiffs have alleged that Federal, as an employer, was obligated under the CBA that was in effect with the Union during the period of July 1, 2002 through June 30, 2005 to submit remittance reports, pay contributions to the Funds, and provide the Funds' auditors with

all pertinent books and records as requested. (Compl. ¶¶ 11, 12).

The Court finds that the allegations that defendant has failed to comply with its contractual obligations and with the statutory requirements of ERISA are sufficient to state claims on which relief is warranted. Additionally, it is beyond dispute that defendant is in default. Not only has the defendant not responded to the motion for judgment and permanent injunction, see Hirsch v. Innovation International, Inc., No. 91 CV 4130, 1992 WL 316143, at *2 (S.D.N.Y. Oct. 15, 1992) (holding that "[the defendant's] default is crystal clear - - it does not even oppose this motion"), but the company has not obtained counsel. Such a failure to obtain counsel constitutes a failure to defend because corporations cannot proceed in federal court pro se. See Shapiro, Bernstein & Co. v. Cont'l Record Co., 386 F.2d 426, 427 (2d Cir. 1967) (per curiam) (noting the well settled law that a corporation cannot appear without an attorney); see also Jones v. Niagara Frontier Transp. Auth., 722 F.2d 20, 22 (2d Cir. 1983) (discussing the rationale for requiring corporations, as "artificial" entities, to appear through counsel only). Further, the amount of money involved in this case is not great, unlike, for example, the Hirsch case, in which a default judgment was not entered in part because the plaintiff's damages request ran well into the millions of dollars. See Hirsch v. Innovation International, Inc., 1992 WL 316143 at *2.

Despite the Trustees' letter requesting an audit, the two letters from plaintiffs' counsel, the Complaint, the motion for entry of default, and this Court's Order setting dates for the submission of papers in connection with this inquest, defendant has not appeared in this action and has not disputed the plaintiffs' allegations. Accordingly, this Court respectfully recommends that default judgment be granted against defendant Federal.

B. Default Judgment Damages

It is well-settled that the burden is on the plaintiff to establish its entitlement to recovery. See Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp., 973 F.2d 155, 158 (2d Cir. 1992), cert. denied, 506 U.S. 1080 (1993); Clague v. Bednarski, 105 F.R.D. 552 (E.D.N.Y. 1985). When a default judgment is entered, the defendant is deemed to have admitted all well-pleaded allegations in the complaint pertaining to liability. See Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp., 973 F.2d at 158; Au Bon Pain Corp. v. Artect, Inc., 653 F.2d 61, 65 (2d Cir. 1981); Montcalm Publ'g Corp. v. Ryan, 807 F. Supp. 975, 977 (S.D.N.Y. 1992); Deshmukh v. Cook, 630 F. Supp. 956, 959 (S.D.N.Y. 1986). However, the plaintiff must still prove damages in an evidentiary proceeding at which the defendant has the opportunity to contest the claimed damages. See Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp., 973 F.2d at 158. "'While a default judgment constitutes an admission of liability, the quantum of damages remains to be established by proof unless the amount is liquidated or susceptible of mathematical computation.'" Levesque v. Kelly Communications, Inc., No. 91 CV 7045, 1993 WL 22113, at *4 (S.D.N.Y. Jan. 25, 1993) (quoting Flaks v. Koegel, 504 F.2d 702, 707 (2d Cir. 1974)).

While "the court must ensure that there is a basis for the damages specified in a default judgment, it may, but need not, make the determination through a hearing." Fustok v. Conticommodity Services, Inc., 122 F.R.D. 151, 156 (S.D.N.Y. 1988), aff'd, 873 F.2d 38 (2d Cir. 1989). Here, where the plaintiffs have filed reasonably detailed declarations and exhibits pertaining to the damages incurred, and where the defendant has failed to make an appearance in the case, the Court can make an informed recommendation regarding damages without an evidentiary hearing.

8

## C. Relief Available Under ERISA

In an ERISA action brought by a fiduciary for or on behalf of a benefit plan to enforce

rights under Section 1145, the statute specifies the damages to be awarded when judgment is

entered in favor of the plan. See 29 U.S.C. § 1132(g)(2). These include:

> (A)  the unpaid contributions,
> (B)  interest on the unpaid contributions,
> (C)  an amount equal to the greater of--
>> (I) interest on the unpaid contributions, or
>> (ii) liquidated damages provided for under
>> the plan in an amount not in excess of 20
>> percent (or such higher percentage as may be
>> permitted under Federal or State law) of the
>> amount determined by the court under
>> subparagraph (A),
> (D)  reasonable attorney's fees and costs of the
> action, to be paid by the defendant, and
> (E)  such other legal or equitable relief as the court
>> deems appropriate.

29 U.S.C. § 1132(g)(2); see also Iron Workers Dist. Council of W.N.Y. & Vincinity Welfare &

Pension Funds v. Hudson Steel Fabricators & Erectors, Inc., 68 F.3d 1502, 1505-08 (2d Cir.

1995).


## D. Injunction

Plaintiffs seek an Order requiring defendant to comply with the CBA and Trust

Agreement and with ERISA by submitting to an audit of the relevant books and records.

(Compl. at 9). Plaintiffs also seek attorneys' fees and costs incurred in obtaining this order. (Id.

at 9-10). Injunctive relief is appropriate under Section 1132(g)(2)(E) of ERISA, which states that

in a successful action to enforce the requirements of ERISA, an ERISA plan may recover "such

other legal or equitable relief as the court deems appropriate." 29 U.S.C. § 1132(g)(2)(E); see

Beck v. Levering, 947 F.2d 639, 641 (2d Cir. 1991) (per curiam), cert. denied, 504 U.S. 909

(1992); Lanzafame v. L & M Larjo Co., Inc., No. 03 CV 3640, 2006 WL 2795348, at *9

(E.D.N.Y. Sept. 26, 2006) (citing cases); King v. Nelco Indus., Inc., No. 96 CV 4177, 1996 WL

629564 (E.D.N.Y. Oct. 23, 1996). In a case such as this, where defendant is in default and where

the applicable statute provides for injunctive relief as a possible remedy, the court may issue an

injunction provided that plaintiffs meet the requirements for obtaining a permanent injunction,

which include a showing of "'irreparable harm should the injunction not be granted.'" King v.

Nelco Indus., Inc., 1996 WL 629564, at *1 (quoting Haitian Centers Council, Inc. v. McNary,

969 F.2d 1326, 1338 (2d Cir. 1992), vacated as moot, 509 U.S. 918 (1993)); see also LaBarbera

v. David Liepper & Sons, Inc., No. 06 CV 1371, 2006 WL 2423420, at *6 (E.D.N.Y. Jul. 06,

2006). Plaintiffs must also demonstrate the absence of an adequate remedy at law. See

LaBarbera v. David Liepper & Sons, Inc., 2006 WL 2423420, at *6.

In this case, where defendant has defaulted and has further refused to submit to the

requested audit, plaintiffs have provided the Court with sufficient evidence "that defendant

intends to frustrate any judgment . . . or show 'contempt for the judicial process'" to satisfy the

requirements for entry of an injunction. King v. Nelco Indus., Inc., 1996 WL 629564, at *1

(internal citations omitted). Thus, this Court recommends that plaintiffs' request for an order

requiring defendant to submit to an audit within 30 days of the date of an Order adopting this

Report and Recommendation be granted.

This Court respectfully recommends that if defendant complies, the matter be referred to

the undersigned to consider any request for delinquent contributions determined through the

audit to be due and owing, along with any requests for interest and liquidated damages. Pursuant

to the governing Trust Agreement and Section 1145 of ERISA, the Court also respectfully

recommends that attorneys' fees and costs be awarded in pursuit of this injunction, as discussed

infra at 16-19.


E. Damages

If defendant fails to comply with the Court's Order or has not maintained records

sufficient to determine contributions due and owing for the audit period, then plaintiffs request

that the Court award damages consistent with the provisions of the Trust Agreement.

Specifically, Article IX(1)(e) of the Trust Agreement provides that to the extent that an employer

has failed to submit the required remittance reports and fails to submit records requested for any

month during the period of an audit, the Funds are entitled to contributions calculated by

multiplying by 110% the number of hours for the month in which the largest number of hours

were reported in the prior twelve reports submitted by the employer. (Cody Decl. ¶ 15, Ex. A;

Jones Decl.[3] ¶¶ 5-7).

According to Article IX(3) of the Trust Agreement, the employer is also obligated to pay

certain designated late charges whenever the employer fails to report and pay contributions.

(Rasalingam Decl.[4] ¶¶ 24-26; Cody Decl. Ex. A). Pursuant to the Trust Agreement, interest on

---

[3]Citations to "Jones Decl." refer to the February 20, 2008 Declaration of Ken Jones, an auditor employed since 2006 by the accounting firm of Wagner & Zwerman, which performs audits for the Trustees. (Jones Decl. ¶ 1).

[4]Citations to "Rasalingam Decl." refer to the Declaration of Anusha Rasalingam, Esq., in Support of Plaintiffs' Request for a Default Judgment, dated March 7, 2008.

unpaid contributions is calculated at 18% per annum on all delinquent contributions. (Rasalingam Decl. ¶ 26; Cody Decl. Ex. A, Amendment to Restated Agreement dated October 28, 2003). In addition, under ERISA, plaintiffs are entitled to the greater of interest owed or liquidated damages calculated at the rate of 20% of the delinquency, plus reasonable attorney's fees. 29 U.S.C. § 1132(g)(2)(C)-(D). The Court therefore respectfully recommends that if defendant fails to comply with the Court's order to submit to an audit, plaintiffs be awarded delinquent contributions and late fees, as discussed below.

## F. Calculation of Default Judgment Damages

### 1) Delinquent Contributions

In their application, plaintiffs seek delinquent contributions owed to the Funds for various time periods as calculated by Ken Jones, an auditor with the accounting firm of Wagner & Zwerman, LLP. (Rasalingam Decl. ¶ 19; Jones Decl.). According to Mr. Jones' Declaration, because Federal refused to submit to an actual audit, he was asked by the Funds to perform an estimated audit of Federal for the period of December 1, 2004 through June 30, 2005. (Jones Decl. ¶¶ 8-9). Federal had submitted remittance reports for the months of December 2004 and January 2005 but failed to submit reports for the pay periods of February 2005 through June 2005. (Id. ¶ 10; Cody Decl. ¶ 17).

Accordingly, Mr. Jones prepared an estimate of contributions owed for each period for which no report had been submitted – February 2005 through June 2005 – which he stated was made in accordance with Article IX(1)(e) of the Trust Agreement, by multiplying by 110% the number of hours for the month in which the largest number of hours was reported in the previous

12

twelve reports. (Jones Decl. ¶¶ 7, 10). Mr. Jones apparently concluded that the appropriate

number of hours for each period from February 2005 through June 2005 was 117, which when

multiplied by 110% comes to 128.7. (See Jones Decl. Ex. A; Rasalingam Decl. ¶ 17). Mr. Jones

then multiplied 128.7 hours by the contribution rate applicable at the time the estimate was

prepared to arrive at his estimate of delinquent contributions. (Jones Decl. ¶ 10).

Mr. Jones' declaration, however, fails to state any basis for concluding that 117 hours was

the appropriate number to use. In fact, nowhere in plaintiffs' papers was the basis for this

number provided. In response to an Order issued by this Court on January 29, 2009 requesting

that plaintiffs provide such documentation, plaintiffs submitted supplemental documents on

February 10, 2009. These documents consisted of a letter from plaintiff's counsel, accompanied

by a copy of another audit report, not previously provided to the Court, for the period from April

2003 through November 2004 ("Pl.'s Supp. Aud."). Included in this audit report is an "Audit

Worksheet Summary" which appears to list the hours reported by defendant for each pay period

from April 2003 through November 2004. (Pl.'s Supp. Aud.). According to this worksheet, the

largest number of hours reported for any of these periods was 117 hours in April 2003. (Id.)

This supplemental audit report appears under the letterhead of the accounting firm of

Armao, Costa & Ricciardi, which is a different accounting firm from the firm that prepared the

audit report submitted with plaintiffs' initial papers. Moreover, the supplemental report, which is

merely a one-page chart without further explanation, was submitted to the Court without a sworn

affidavit explaining who prepared it and without any statement explaining whether Mr. Jones and

his firm relied on it in preparing their own report. In the absence of an affidavit explaining the

basis and origin of this chart, and in the absence of a statement from Mr. Jones that he based his

estimated audit on these figures compiled by another firm or independently verified the other firm's findings, the Court can only surmise as to the meaning of this chart. At this point, without a further submission from plaintiff as to these matters, the Court cannot recommend awarding the damages requested. However, if such documentation is provided, it is respectfully recommended that damages be awarded as described below.

The number of hours estimated in accordance with the Trust Agreement on the basis of the supplemental audit report are set forth below:

### DELINQUENT CONTRIBUTIONS
### (Feb. 2005 - June 2005)

| FUND | HOURS | CONTRIBUTION RATE | AMOUNT OWED |
|------|-------|-------------------|-------------|
| Welfare | 643.5 | $9.20 | $5,920.20 |
| Pension | 643.5 | $6.15 | $3,957.53 |
| Annuity | 643.5 | $7.11 | $4,575.29 |
| Job Training | 643.5 | $0.10 | $64.35 |
| Vacation/Sick Leave | 643.5 | $2.80 | $1,801.80 |
| TOTAL OWED | | | $16,319.17 |

(See Jones Decl. Ex. A; Pl.'s Supp. Aud.; Rasalingam Decl. at 8).[5]

Plaintiffs also appear to allege a deficiency for December 2004 and January 2005 (Rasalingam Decl. ¶¶ 17-18), but they have not given the Court any documentation which would

----

[5]The total delinquent contributions according to the Jones Declaration is $10,868.16. (Jones Decl. ¶ 11). However, the higher total requested by Ms. Rasalingam (Rasalingam Decl. at 8) and listed in the table above is correct, based on the calculations made for the Funds by Mr. Jones. (Jones Decl. Ex. A).

form the basis of such a finding. (See Jones Decl. Ex. A).

Having reviewed the Jones Declaration and the calculations performed in accordance with the formula set forth in the Trust Agreement, the Court finds that defendants owe plaintiffs a total of $16,319.17 in delinquent contributions. The Court notes that to date, defendant has not challenged these figures or objected in any way to plaintiffs' estimates.

Accordingly, if defendant fails to comply with the Court's Order to submit to an audit and the plaintiff submits the requisite documentation described above, it is respectfully recommended that plaintiffs be awarded $16,319.17 in delinquent contributions.

2) Interest

In addition to seeking an award of delinquent contributions, plaintiffs also seek an award of interest accrued during the period of delinquency through February 8, 2008 in the amount of $8,150.63. (Jones Decl. ¶ 13, Ex. A). Under the terms of the Trust Agreement and 29 U.S.C. § 1132(g)(2), plaintiffs are entitled to an award of interest for the period of delinquency. (Cody Decl. Ex. A, Art. IX(3)). The CBA and the Trust Agreement provide for interest to be calculated at the rate of 18% per annum for the period of delinquency. (Rasalingam Decl. ¶ 26; Cody Decl. Ex. A, Amendment to Restated Agreement dated October 28, 2003).

Having reviewed the Jones, Rasalingam, and Cody Declarations and supporting documentation, the Court finds plaintiffs' calculation of interest to be accurate. Further, pursuant to 29 U.S.C. § 1132(g)(2) and the Trust Agreement, plaintiffs are entitled to additional interest, calculated at the same rate, up to the date that judgment is finally entered. The Court accordingly respectfully recommends that plaintiffs be awarded $8,150.63 in interest for the period of delinquency through February 8, 2008 and $3,186.93 in interest for the period from February 8,

2008 through the date of this Report and Recommendation, for a total interest award of $11,337.56.

3) Liquidated Damages

Plaintiffs also seek liquidated damages equal to the amount awarded in interest.(Rasalingam Decl. at 8). In keeping with 29 U.S.C. § 1132(g)(2)(C), Article IX(3)(d) of the Trust Agreement provides that plaintiffs are entitled to recover in liquidated damages the greater of the amount of the interest awarded, or 20% of unpaid contributions. (Cody Decl. Ex. A). In this case, the amount of interest is greater than 20% of the unpaid contributions, and accordingly, it is respectfully recommended that $11,337.56 in liquidated damages be awarded to plaintiffs.

4) Audit Fees

Plaintiffs additionally request audit fees of $255.00 to compensate Wagner & Zwerman for the work performed by Mr. Jones in preparing the estimated audit. (Jones Decl. ¶ 14). Audit fees are available pursuant to Article IX(3) of the Trust Agreement, and under Section 1132(g)(2)(E) of ERISA, which provides for "such other legal or equitable relief as the court deems appropriate." See Lanzafame v. L & M Larjo Co., Inc., 2006 WL 2795348, at *8 (citing cases); see also Martone v. HST Roofing, Inc., No. 03 CV 3640, 2007 WL 595054, at *4 (E.D.N.Y. Feb. 22, 2007) (awarding audit fees). Having reviewed the documentation submitted in connection with these proceedings, the Court finds this amount to be compensable and reasonable, and respectfully recommends that audit fees in the amount of $255.00 be awarded to plaintiffs.

5) <u>Attorneys' Fees</u>

Plaintiffs also request attorney's fees and costs in the amount of $2,905.51[6] through

March 7, 2008, representing services performed by counsel in connection with plaintiffs' efforts

to obtain this judgment. (Rasalingam Decl. ¶¶ 29-31, Exs. C, D). Pursuant to 29 U.S.C.

§ 1132(g)(2)(D) and Article IX(3) of the Trust Agreement, plaintiffs are entitled to an award of

costs and disbursements, including reasonable attorneys' fees. (<u>See</u> Cody Decl. Ex A).

When assessing whether claimed legal costs are reasonable, the Court determines the

"presumptively reasonable fee" for an attorney's services by looking to what a reasonable client

would be willing to pay. <u>See</u> <u>Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of</u>

<u>Albany and Albany County Bd. of Elections</u>, 522 F.3d 182, 183-84 (2d Cir. 2008). In order to

calculate the presumptively reasonable fee, a court is first required to determine a reasonable

hourly rate for the legal services performed. <u>Id.</u> The Second Circuit has adopted the following

factors, <u>inter alia</u>, to guide the court's inquiry as to what constitutes the reasonable hourly rate:

> (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the level of skill required to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the attorney's customary hourly rate; (6) whether the fee is fixed or contingent; (7) the time limitations imposed by the client or the circumstances; (8) the amount involved in the case and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases . . .

<u>Id.</u> at 187 n.3 (citing <u>Johnson v. Ga. Highway Express, Inc.</u>, 488 F.2d 714, 717-19 (5th Cir.

---

[6]Of the $2,905.51 requested, $2,464.00 represents attorney's fees, with the remaining $444.51 representing costs and disbursements requested by plaintiffs. (Rasalingham Decl. ¶¶ 29-31, Ex. D).

1974)). A number of recent cases have applied some of these <u>Arbor Hill</u> factors when awarding

attorney's fees. <u>See</u> <u>Lochren v. County of Suffolk</u>, No. 01 CV 3925, 2008 WL 2039458, at *2

(E.D.N.Y. May 9, 2008); <u>see also</u> <u>Cruz v. Henry Modell & Co., Inc.</u>, No. 05 CV 1450, 2008 WL

905351, at *3 (E.D.N.Y. Mar. 31, 2008).

Courts are also instructed to balance:

> the complexity and difficulty of the case, the available expertise and
> capacity of the client's other counsel (if any), the resources required
> to prosecute the case effectively . . ., the timing demands of the case,
> whether the attorney might have an interest (independent of that of his
> client) in achieving the ends of the litigation or might initiate the
> representation himself, whether the attorney might have initially acted
> <u>pro bono</u> . . ., and other returns (such as reputation, etc.) the attorney
> might expect from the representation.

<u>Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany</u>, 522 F.3d at 184; <u>see</u>

<u>also</u> <u>Heng Chan v. Sung Yue Tang Corp.</u>, No. 03 CV 6048, 2007 WL 1373118, at *2 (S.D.N.Y.

May 8, 2007) (applying some of these <u>Arbor Hill</u> factors).

In awarding attorney's fees in the present case, the Court is guided principally by the fact

that default actions are relatively simple legal matters, taking into account as well the attorney's

degree of skill, and the Court's own experience dealing with similar claims.

As required by <u>New York State Ass'n for Retarded Children, Inc. v. Carey</u>, 711 F.2d

1136, 1148 (2d Cir. 1983), plaintiffs' counsel, Anusha Rasalingam, Esq., has submitted

contemporaneous billing records setting forth the dates and amount of time during which services

were rendered, along with the name of the attorney and a description of services performed.

(Rasalingam Decl. ¶ 29, Ex. C). Plaintiffs' records indicate that only Rasalingam worked on this

matter. (<u>Id.</u>) According to her Declaration, she graduated from law school in 1999 and billed at

the rate of $280.00 per hour.  (Id. ¶ 29).

Having reviewed the descriptions of the 8.8 hours reflected in the billing records submitted by plaintiffs (id. Ex. C), the Court finds that the time spent on the matter was reasonable.

The Court finds that Rasalingam's requested rate is consistent with the amount charged by other attorneys for work on similar matters.  See, e.g., Annuity, Pension, Welfare & Training Funds of Int'l Union of Operating Eng'rs v. N. Am. Iron Works, Inc., No. 07 CV 2257, 2008 WL 4724507, at *4 (E.D.N.Y. Oct. 24, 2008) (approving a rate of $285 for attorney's fees in an ERISA default action) (citing cases); Martone v. HST Roofing, Inc., No. 03 CV 4165, 2007 WL 59054, at *2-3 (E.D.N.Y. Feb. 22, 2007) (determining that a rate of $250.00 per hour should be applied to work performed pertaining to a defaulting defendant); King v. STL Consulting, LLC, No. 05 CV 2719, 2006 WL 3335115, at *7 (E.D.N.Y. Oct. 3, 2006) (noting that hourly rates for partners and senior associates approved in recent cases in this district have ranged from $200 to $375) (citing cases).  Therefore, the Court respectfully recommends that plaintiffs be awarded attorney's fees in the amount of $2,464.00, corresponding to 8.8 hours of work at a rate of $280 per hour.

Plaintiffs also seek costs and disbursements in the sum of $444.51.  (Rasalingam Decl. ¶ 31, Ex. D).  The Court has reviewed the records submitted and finds the costs requested to be reasonable.  The Court therefore respectfully recommends that plaintiffs be awarded attorney's fees and costs in the amount of $2,908.51.

CONCLUSION

Accordingly, it is respectfully recommended that (1) an Order enter requiring defendant to submit to an audit within 30 days; (2) if defendant complies with the audit, the Court recommends that there be a further referral to this Court to calculate contributions, interest and liquidated damages based on the audit; (3) if defendant fails to comply with the Order or has failed to maintain the records necessary to perform the audit, and if plaintiffs submit the documentation establishing the basis of its audit as described above, then this Court respectfully recommends that plaintiffs be awarded damages in the amount of $42,157.80, representing the sum of $16,319.17 in delinquent contributions owed; $11,337.56 in prejudgment interest, $11,337.56 in liquidated damages, $2,908.51 in attorneys' fees and costs, and $255.00 in audit fees.

Any objections to this Report and Recommendation must be filed with the Clerk of the Court, with a copy to the undersigned, within ten (10) days of receipt of this Report. Failure to file objections within the specified time waives the right to appeal the District Court's Order. See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(e), 72; Small v. Sec'y of Health & Human Servs., 892 F.2d 15, 16 (2d Cir. 1989).

The Clerk is directed to send copies of this Report and Recommendation to the parties either electronically through the Electronic Case Filing (ECF) system or by mail.

**SO ORDERED.**

Dated: Brooklyn, New York
March 10, 2009

Cheryl L. Pollak
United States Magistrate Judge

20